IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWEST DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| JOSEPH WARREN TERRY, ) | Case No. 08-43123 |
| ) | |
| Debtor. ) | |
| ) | |
| JOSEPH WARREN TERRY, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adversary No. 09-3031 |
| ) | |
| STANDARD INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The pending issue in this adversary proceeding is whether Standard Insurance Company may exercise the equitable right of recoupment to recover $45,316.54 in alleged benefit "overpayments" from the Debtor's future disability benefits.

One week before Joseph Terry filed a Chapter 7 bankruptcy petition, the Defendant, Standard Insurance Company ("Standard"), recovered from Terry $45,316.54 in "overpayments" that had been made to Terry under a long term disability insurance policy. The Chapter 7 trustee ("Trustee") asserted that the payment to Standard was a preference under 11 U.S.C. § 547 and demanded that Standard turn the money over to him. Standard did so and then initiated steps to recoup that amount from the Debtor's post-bankruptcy disability benefits.

The Debtor then filed this adversary proceeding to: 1) obtain turnover of the money obtained by the Trustee from Standard, which money the Debtor claimed as exempt; and 2) obtain a declaratory judgment that Standard is not entitled to reduce Terry's future benefit payments to recoup the $45,316.54. On March 23, 2010, the Court ruled in the main case that the Debtor could not claim as exempt the money that he had paid to Standard, rendering the first issue in the adversary complaint moot. The sole remaining issue is whether Standard may exercise the equitable right of recoupment post-bankruptcy to recover the money that it turned over to the Trustee.

For the reasons stated below, the Court holds that Standard may not recoup the $45,316.54 from Terry's future disability payments and that Standard is limited to filing a general unsecured claim under 11 U.S.C. § 502(h) against the Debtor's bankruptcy estate.

## BACKGROUND

The Debtor became disabled and unable to work on or about December 5, 2005. Shortly thereafter, he filed a claim under a long term disability insurance policy ("Policy") issued by Standard Insurance Company.[1] He began receiving benefits under the Policy in August 2006.

Germanely, the Policy provides that benefits payable to a disabled employee will be reduced on a dollar-for-dollar basis by any benefits a disabled employee receives under the Social Security Act. The Policy requires disabled employees to actively pursue the recovery of all available Social Security benefits, and in connection with his claim for benefits under the Policy, the Debtor authorized Standard (through an agent) to automatically withdraw from his bank account any retroactive Social Security disability benefits received by the Debtor. The amount withdrawn would be used to satisfy the resulting "overpayment" obligation.

On July 17, 2008, the Debtor received a $45,316.54 lump-sum award of Social Security disability benefits retroactive to June 1, 2006. Consistent with his obligations under the Policy, Standard withdrew that amount from the Debtor's bank account on July 24, 2008.[2] Terry filed a Chapter 7 bankruptcy petition one week later, on July 31, 2008.

On April 20, 2009, the Trustee sent a letter to Standard demanding that it turn over the $45,316.54 received from the Debtor on the basis that it was a preferential payment pursuant to 11 U.S.C. § 547. Standard complied, with apparently no resistance, and then began reducing its monthly payment obligations to Debtor under the Policy to recover the funds lost to the Trustee's § 547 demand. Standard ceased these reductions pending resolution of the parties' dispute and repaid to the Debtor all amounts previously withheld, when the Court commented that such reductions might be in violation of the automatic stay.

---

[1] The policy was a benefit of the Debtor's employment with the State of Missouri.

[2] Although the withdrawal was automatic, pursuant to a pre-authorization the Debtor executed at the time he made a claim under the Policy, the Court has held that the transfer was voluntary.

This adversary proceeding ensued.

## DISCUSSION

The parties frame this dispute in terms of whether Standard has met the common law requirements for exercising its equitable right of recoupment to decrease future payments owed to the Debtor under the Policy. Recoupment is an equitable doctrine that operates similarly to set-off, permitting a defendant to reduce or extinguish a plaintiff's claim by reason of a claim the defendant has against the plaintiff. Recoupment differs from set-off, though, in that recoupment requires that the offsetting claims must have arisen out of the same transaction.[3] And, as is pertinent to its application in bankruptcy, recoupment does not require mutuality with respect to the petition date. In other words, a pre-petition obligation can be "recouped" from a post-petition obligation; the doctrine of set-off requires that both obligations arise either pre-petition or post-petition.

As Standard points out, recoupment is routinely asserted in bankruptcy cases by insurance providers as a defense against an insured's claim for post-petition insurance payments where the insured-debtor owes the insurance provider for pre-petition overpayments under the insurance contract.[4] This case, Standard argues, is no different from those cases, and therefore, it should be permitted to exercise its right of recoupment with regard to future payments due the Debtor under the Policy. The Debtor argues, somewhat obliquely, that the Court should not permit Standard to exercise its equitable right of recoupment because the equities weigh against Standard. Specifically, the Debtor contends that Standard breached its (alleged) fiduciary duty to the Debtor by not more vigorously defending against the Trustee's preference demand. Both of these arguments, however, fail to appreciate the impact the Trustee's avoidance of the Debtor's payment to Standard has on the recoupment analysis here.

---

[3] *See U.S. Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 623 (8th Cir. 1994) (*citing In re Univ. Med. Ctr.*, 973 F.2d 1065, 1081 (3rd Cir. 1992) ("[B]oth debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.")).

[4] *See, e.g., In re Caldwell*, 350 B.R. 182, 195-197 (Bankr. E.D. Pa. 2006); *In re Powell*, 284 B.R. 573 (Bankr. D. Md. 2002); *In re Lord*, 284 B.R. 179 (Bankr. D. Mass. 2002).

Standard's claim in this case is unlike the claims asserted in moust insurance recoupment cases. In most cases, and possibly all such cases, based on the Court's research, the insurance company has not recovered the overpayments from the debtor pre-petition, nor has it paid over any recovered overpayments to the Trustee; rather, it is simply attempting to recover the overpayments from the debtor's future benefit payments. In contrast, here, Standard's claim against the Debtor for the overpayments was satisfied when Terry repaid the $45,316.54 one week before he filed his bankruptcy petition. Accordingly, Standard's claim against the Debtor in this case exists only through the operation of 11 U.S.C. § 502(h) – the Bankruptcy Code section that gives the transferee of an avoided preference a claim against the estate, *not against the Debtor*. Therefore, the dispositive question before the Court is whether a claim under § 502(h) can be asserted against a debtor and satisfied through the doctrine of recoupment.

Section 502(h) provides:

> "A claim arising ... under section ... 550 ... *shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section ... the same as if such claim had arisen before the date of the filing of the petition.*"[5]

Standard contends that § 502(h) permits a claim for recoupment because, as several courts have opined, a § 502(h) claim "takes on the characteristics of the original claim [paid by the preferential payment]."[6] The cases Standard cites for this proposition, however, do not involve claims for recoupment. And, more important, permitting a claim for recoupment under § 502(h) conflicts with the plain language of the statute, which on its face precludes a claim for recoupment, inasmuch as the statute states that a claim resulting from a trustee's avoidance of a transfer "shall

---

[5] 11 U.S.C. § 502(h) (emphasis added).

[6] Defendant's Reply Brief (Doc. # 30), at p. 4 citing: *Busseto Foods, Inc. v. Charles Laizure* (*Matter of Charles Laizure*), 548 F.3d 693, 697 (9th Cir. 2008) (holding that claim arising under § 502(h) as a result of creditor's disgorgement of a preferential payment made on a nondischargeable debt is likewise nondischargeable); *The Official Committee of Unsecured Creditors of Enron Corp. v. Martin* (*In re Enron Creditors Recovery Corp.*), 376 B.R. 442, 465 (Bankr. S.D. N.Y. 2007) (involving general unsecured claim); and *Fleet National Bank v. Gray* (*In re Bankvest Capital Corp.*), 375 F.3d 51, 67 (1st Cir. 2004) (involving secured claim). *See also*, *In re Hackney*, 93 B.R. 213, 217-218 (Bankr. N.D. Cal. 1988)("[T]he claim arising from the avoidance of a transfer under 11 U.S.C § 502(h) is a claim against the debtor, not just a claim against the estate.").

be determined, and shall be allowed under [§ 502] (a), (b), or (c)."[7] A claim for recoupment is not "allowed" under § 502; rather, it exists outside the Bankruptcy Code by operation of common law.[8]

This interpretation of § 502(h) is confirmed, and likely mandated, by *U.S. Postal Service v. Dewey Freight System., Inc.*,[9] wherein the Eighth Circuit Court of Appeals held that 11 U.S.C. § 502(g)(1), which contains the same operative language as § 502(h), precludes a claim for recoupment.[10] Section 502(g)(1) states: "A claim arising from the rejection, under section 365 of this title ... of an executory contract ... *shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section ... the same as if such claim had arisen before the date of the filing of the petition.*"[11]

In *U.S. Postal Service*, the U.S. Postal Service sought to reduce post-petition payments owed to the debtor-in-possession, Dewey Freight System, Inc., by the amount of damages incurred by the U.S. Postal Service for Dewey's post-petition non-performance and ultimate rejection of the contract under 11 U.S.C. § 365. In other words, the U.S. Postal Service sought to "recoup" the damages caused by the debtor-in-possession's actions taken under § 365 by reducing its future payment obligations under the contract. The Eighth Circuit prohibited this, holding that under § 502(g)(1), the U.S. Postal Service's claim "must be administered through bankruptcy and receive a general unsecured creditor's priority."[12]

Although the context under which the claim arose in *U.S. Postal Service* – contract rejection under § 365 – and this case – preferential transfer avoidance and recovery under § 547 and § 550 – differ, the circumstances are analogous, and more important, the language of the Code sections

---

[7] 11 U.S.C. § 502(h).

[8] *See U.S. Postal Serv.*, 31 F.3d at 624 (8th Cir. 1994). *See also Matter of Gaither*, 200 B.R. 847, 850 (Bankr. S.D. Ohio. 1996)("Because recoupment only reduces a debt, rather than constituting an independent basis for a debt, it is not a claim in bankruptcy.").

[9] *U.S. Postal Serv.*, 31 F.3d at 624.

[10] *Id.* at 623-25.

[11] 11 U.S.C. § 502(g)(1) (emphasis added).

[12] *Id.* at 625.

5

addressing the allowance of those claims is identical.  Therefore, the Court finds that the Eighth Circuit's prohibition of recoupment under § 502(g)(1) applies equally to prohibit the recoupment of claims arising under § 502(h).

Finally, the Court notes that this interpretation of § 502(h) is consistent with the Eighth Circuit's general hesitancy to apply recoupment in bankruptcy cases.  "A fundamental tenet of bankruptcy law is that a petition for bankruptcy operates as a 'cleavage' in time.  Once a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions. . . . Any recoupment exception to this general principle should be narrowly construed."[13]  And it squares with the purpose of the avoidance provisions in the Bankruptcy Code.  The avoidance of a preferential payment advances the goal of equal distribution to creditors,[14] so it would be inimical to that purpose to interpret § 502(h) in such a way that would permit that creditor to once again obtain preference over other creditors by use of the doctrine of recoupment.

## CONCLUSION

For the reasons stated above, the Court holds that Standard Insurance Company may not recoup the $45,316.54 from the Debtor's future disability payments and that it is limited to filing a general unsecured claim under 11 U.S.C. § 502(h) against the Debtor's bankruptcy estate.  The Debtor's request for a declaratory judgment will, therefore, be granted.

A separate judgment will be entered contemporaneously with this memorandum opinion.

**ENTERED** this 21st day of July, 2010.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:

---

[13]*Id* at 623 (citing *In re B & L Oil Co.*, 782 F.2d 155, 158 (10th Cir. 1986)).

[14]*In re Smith*, 966 F.2d 1527, 1535 (7th Cir. 1992)("[T]he avoidance power promotes the 'prime bankruptcy policy of equality of distribution among creditors' by ensuring that all creditors of the same class will receive the same pro rata share of the debtor's estate")(quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 177-78 (1978)).

Norman E. Rouse
Seth Albin
Kevin Checkett