# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWEST DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| JOSEPH WARREN TERRY, ) | Case No. 08-43123 |
| ) | |
| Debtor. ) | |
| ) | |
| JOSEPH WARREN TERRY, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adversary No. 09-3031 |
| ) | |
| STANDARD INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

On July 21, 2010, the Court entered a declaratory judgment in favor of the Debtor/Plaintiff, Joseph Terry, finding that Defendant Standard Insurance Company could not recoup $45,316.54 in pre-petition benefit "overpayments" from the Debtor's future disability payments. The Court denied Standard's right of recoupment primarily on the basis of 11 U.S.C. § 502(h),[1] which the Court interpreted as limiting Standard to filing a general unsecured claim against the Debtor's bankruptcy estate. On January 28, 2011, the Bankruptcy Appellate Panel for the Eighth Circuit reversed the Court's decision and remanded the matter for a determination of whether it would be equitable for Standard to recoup the overpayments from the Debtor:

> Recoupment is only allowed where it would be "inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations,' and recoupment should be narrowly construed in bankruptcy." *Dewey* at 623.[2] Standard's rights are not absolute, and the equities must be weighed. Because the bankruptcy court did not reach the question of whether the equities favor allowing recoupment, we must remand.[3]

The parties agreed that in lieu of further hearings the Court could decide the matter based

---

[1] The Court also noted, but did not discuss in detail, that it would be inequitable under these circumstances to permit Standard's right of recoupment.

[2] *U.S. Postal Serv. v. Dewey Freight Systems, Inc.*, 31 F.3d 620, 623 (8th Cir. 1994).

[3] *In re Terry*, --- B.R. ----, *4, 2011 WL 260407 (B.A.P. 8th Cir. 2011).

on the record in the adversary proceeding, the transcript of a hearing on the Trustee's Objection to Exemptions in the main case, relevant dates or events occurring within the main case, and simultaneous briefs to be submitted by the parties.

Upon consideration of this material, the Court finds that the equities weigh against permitting Standard to recoup the benefit overpayments from the Debtor's future disability payments. The Court will, however, allow Standard an unsecured claim in the amount of $45,316.54, inasmuch as the Court deems Standard's pleadings and statements in this case to constitute a timely filed, informal proof of claim.[4]

## BACKGROUND

For purposes of clarity, the Court restates the facts of this case with additions from the aforementioned materials.

On or about December 6, 2005, the Debtor, Joseph Terry, became disabled and unable to continue his employment with the state of Missouri as the result of a severe bipolar disorder with psychotic features. The numerous medications he was taking (and continues to take) to control this disorder severely impair his cognitive abilities. As a State employee, Terry was covered by a group long-term disability policy ("Policy") issued by Standard Insurance Company. He filed a claim under the Policy, and Standard began paying disability benefits to Terry in August 2006.

The Policy provides that benefits payable to a disabled employee will be reduced on a dollar-for-dollar basis by any benefits a disabled employee receives under the Social Security Act. It requires disabled employees to actively pursue the recovery of all available Social Security benefits, and in connection with his claim for benefits under the Policy, Terry authorized Standard (through an agent) to automatically withdraw from his bank account any retroactive Social Security disability benefits received by the Debtor. The amount withdrawn would be used to satisfy the resulting "overpayment" obligation.

On July 17, 2008, the Debtor received a $45,316.54 lump-sum award of Social Security disability benefits retroactive to June 1, 2006. Consistent with Terry's prior authorization, Standard

---

[4] *See In re Farmland Industries, Inc.*, 318 B.R. 159, 163 (Bankr. W.D. Mo. 2004) ("An informal claim must apprise the court as to the existence, nature, and amount of the claim and clearly state the creditor's intention to hold the debtor liable and pursue such claim in the debtor's bankruptcy estate.").

withdrew that amount from the Debtor's bank account on July 24, 2008. Terry filed a Chapter 7 bankruptcy petition one week later, on July 31, 2008.

On April 20, 2009, the Trustee sent a letter to Standard demanding that it turn over the $45,316.54 received from the Debtor on the basis that the payment was avoidable and a preference under 11 U.S.C. § 547. Standard complied with apparently no resistance.

Shortly thereafter, the Debtor claimed an exemption in the money the Trustee recovered from Standard. The Trustee objected to this exemption, arguing, *inter alia*, that under 11 U.S.C. § 522(g) the Debtor could not claim the recovered funds as exempt because he had voluntarily transferred the money to Standard.[5] After extensive briefing by the Debtor, the Trustee, and Standard, and a hearing on the matter, the Court sustained the Trustee's objection, holding that the Debtor's consent to Standard's automatic withdrawal of any retroactive Social Security award constituted a voluntary transfer of the money, notwithstanding the fact that the transfer itself required no further voluntary action by the Debtor. The Court further held that the Debtor could not claim an exemption in property that he did not have in his possession when he filed his bankruptcy petition.

This adversary proceeding progressed as outlined above.

## **DISCUSSION**

As the Bankruptcy Appellate Panel reiterated, recoupment is to be narrowly construed in bankruptcy, and a court should permit recoupment only where it would be inequitable for a debtor to enjoy the benefits of a transaction without also meeting its obligations. Following this directive, the Court finds that the equities favor denying Standard's right of recoupment.

Although the Court's research has not uncovered any generic equitable factors to consider in determining whether to permit recoupment, the Bankruptcy Appellate Panel alluded to several considerations germane to this case:

> For instance, if the [bankruptcy] court were to allow recoupment, Terry would be required to repay the funds a second time, which the debtor argues would be a particularly inequitable result for a permanently disabled debtor. In addition, allowing recoupment might compromise the debtor's fresh start. We also note that Standard did not defend itself against the trustee's preference demand. Although we

---

[5] 11 U.S.C. § 522(g).

3

express no opinion on the merits of the trustee's claim or any defenses Standard might have had, in some cases, the failure to defend a preference demand would be relevant.

All of these factors weigh against permitting recoupment in this case.

First, depriving the Debtor of his post-petition insurance benefits would, indeed, be tantamount to making him repay his debt to Standard a second time. The Court has already conclusively determined that the Debtor <u>voluntarily</u> transferred to Standard $45,316.54 in retroactive Social Security disability benefits on July 24, 2008. And while the reason Standard didn't recover these funds might not matter to Standard, it is relevant from an equitable perspective,[6] especially considering that Standard put up little or no resistance to the Trustee's preference demand.[7]

Second, the Court finds that permitting recoupment here would impose a hardship on the Debtor and unduly impair the Debtor's fresh start, despite Standard's contention that the Debtor will enjoy a budget surplus after certain expenses are discounted.[8] Even discounting these expenses, the Debtor's budget is sparse, at best. At the time of filing, Terry was paying only $200 in rent – a figure the Court doubts is realistic or sustainable – and he listed only $120 for medical expenses, which is likely also understated, considering the severity of his illness. In all likelihood, Terry's income for the balance of his life will consist of his Social Security disability income of $1,950 a month and the $430 a month he receives from Standard. His income for the foreseeable future, then, is less than $30,000 a

---

[6] The cases cited by Standard in opposition to this point – *Covey v. Sonnemaker, Sonnemaker & Vespa, P.C.* (*In re Lovett*), 106 B.R. 551, 552-3 (Bankr. C.D. Ill. 1988) and *In re Kayajanian*, 27 B.R. 711 (Bankr. S.D. Fla. 1983) – are inapposite and unpersuasive. Both cases deal with courts' consistent rejection of the argument that a pre-petition payment on a nondischargeable debt is not avoidable as a preference because the creditor can, presumably, recover its debt from the debtor post-petition. This proposition is wholly unrelated to the equitable considerations bearing on the apparently unique situation where a debtor makes a preferential transfer to a creditor who might have a post-petition right of recoupment.

[7] Ironically, one of Standard's defenses to a § 547 action would have been that its then-potentially-viable right of recoupment would have enabled it to receive as much in a Chapter 7 liquidation. *See* 11 U.S.C. § 547(b)(5). However, it did not assert that – or any other – defense.

[8] The expenses to which Standard objects are $300 for an unlisted dependent and a $1,015 mortgage payment for an unprofitable rental property. The expenses related to the rental property have likely already been eliminated since the creditor holding a lien against the property has been granted relief from the automatic stay. *See* Bankruptcy Docket No. 70.

year.

On balance, considering all the equities, Standard is simply in a better position to sustain this loss than the Debtor is, and not just because Standard is a "big insurance company with deep pockets." Having observed Terry in Court and being aware of his medical prognosis, the Court believes that Terry's employment prospects are extremely bleak, casting great doubt on whether he can ever make up for this loss of income, whereas Standard (presumably) has the ability to continue writing policies and earning money for the foreseeable future.

Finally, the Court would be remiss if it didn't note that had Standard challenged the Trustee more vigorously or even simply filed a claim and not engaged in this litigation, it would have obtained a greater net recovery than it would even if the Court permitted recoupment at this juncture.

## **CONCLUSION**

The Eighth Circuit Court of Appeals and Bankruptcy Appellate Panel have unequivocally stated that recoupment is an equitable doctrine.[9] Thus, the Court must look beyond the mere fact that the debt owed to the creditor and the benefits to be enjoyed by the debtor arise from the same transaction. Looking beyond this fact, the Court finds that it would be inequitable to permit Standard to recoup under the circumstances of this case. The Court will, however, allow Standard an unsecured claim in the amount of $45,316.54.

A separate order consistent with this Memorandum Opinion will be entered contemporaneously herewith.

**ENTERED** this 13th day of April 2011.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed

---

[9] *See Dewey Freight Systems, Inc.*, 31 F.3d at 622-623; *In re Terry*, 2011 WL 260407, at *3-4.

5

conventionally or electronically to:
Norman E. Rouse
David D. Farrell
Kevin Checkett